

**U.S. Department of Justice**



United States Attorney
District of Maryland
Northern Division

| | | |
|---|---|---|
| Rod J. Rosenstein | 36 South Charles Street | DIRECT: 410-209-4809 |
| United States Attorney | Fourth Floor | MAIN: 410-209-4800 |
| | Baltimore, Maryland 21201 | FAX: 410-962-0716 |
| Paul N. Nitze | | TTY/TDD: 410-962-4462 |
| Special Assistant United States Attorney | | |

March 7, 2013

Howard Miliman, Esq.
110 E. Lexington St., Suite 320
Baltimore, MD 21202

> Re:   *United States v. Scerena Simpson Genus*,
>        Criminal No. RDB 12-0541

Dear Mr. Miliman:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by **March 22, 2013**, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.     The Defendant agrees to plead guilty to Count Three of the Superseding Indictment now pending against her, which charges her with Aggravated Identity Theft, in violation of 18 U.S.C. §1028A. The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) the Defendant knowingly transferred, possessed, or used a means of identification of another person, without lawful authority; (2) the Defendant knew the identity belonged to a real person; and (3) the Defendant did so during and in relation to a felony violation set forth in 18 U.S.C. §1028A(c), to wit, misuse of a

Revised 11/5/09

GOVERNMENT EXHIBIT

Direct Express debit card.

<u>Penalties</u>

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a two year mandatory period of incarceration, one year supervised release, and a $250,000.00 fine.  In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

<u>Waiver of Rights</u>

4.     The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a.     If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

d.      The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e.      If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the

Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines:   Pursuit to U.S.S.G. $SSC-3/28$ §2B1.6(a), a period of 24 months of imprisonment must be imposed for Count ~~Five.~~ Three  JDM 3/28

PKW 3/28

7.      The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range,  no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9.      At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Restitution

11.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses.  The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.  The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

12.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

13.     In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

14.     The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Waiver of Appeal

15.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 24 months imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 24 months imprisonment.

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

16.     The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the

event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul K. Nitze
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3/20/13
_____          _____
Date                                                        Scerena Simpson Genus

I am Scerena Simpson Genus's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

3/22/13
_____          _____
Date                                                        Howard Miliman, Esquire

Page 7

## ATTACHMENT A
## FACTUAL STIPULATION - SCERENA SIMPSON GENUS

*The parties hereby stipulate and agree that if this matter had gone to trial the government would have proven the following facts through competent evidence beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence which would have been presented had this matter gone to trial, but that these facts are sufficient to establish the elements of the crime of aggravated identity theft beyond a reasonable doubt.*

The defendant, **SCERENA SIMPSON GENUS ("GENUS")** was born on November 24, 1977 and lives with her mother, Doreen Spence, in a house on Finney Avenue in Baltimore, MD (the "Finney Avenue house"). Until January 2013, **GENUS** was employed as a Correctional Officer at the Patuxent Institution, a Maryland state correctional facility in Jessup, MD. No later than September 2011, Spence and **GENUS** received Direct Express debit cards that had been mailed to them at the Finney Avenue house at the instigation of co-conspirators who live in Jamaica.

The Direct Express debit cards received by Spence and **GENUS** were sent by Affiliated Computer Services ("ACS") in the name of individual Social Security Administration benefits recipients (the "individual victims"). ACS manages the Direct Express debit card program for Comerica Bank, a financial services company headquartered in Dallas, TX. Comerica Bank contracts with the U.S. Treasury Department to provide Direct Express debit cards to beneficiaries of various federal programs which disburse cash benefits. The Direct Express debit card program is intended to provide an alternative to paper checks to beneficiaries who lack a bank account, and are therefore ineligible for direct deposit of benefits. To sign up for a Direct Express debit card, a beneficiary must either call a customer service representative by telephone or use an online portal maintained by ACS. In either case, the beneficiary must provide his personal identifying information to ACS in order to change his method of payment. Once that information has been provided, ACS issues a new Direct Express debit card to the street address provided by the beneficiary and sends a PIN number by email to the email address associated with the account. Once the beneficiary has used the PIN to activate the Direct Express debit card, the benefits are loaded directly onto the card on or around the first of each month. The Direct Express debit card can then be used to make cash withdrawals or purchases up to the amount of benefits. Each Direct Express debit card has the name of the individual beneficiary on the face of the card.

No later than September 2011, co-conspirators living in Jamaica, who included various cousins and other family members of Spence and **GENUS**, applied by telephone for Direct Express debit cards in the names of the individual victims. The co-conspirators applied using the individual victims' personal identifying information, to which they were not entitled, and impersonated the individual victims to ACS customer service representatives. The co-conspirators obtained this information by, among other means, telling the individual victims that they had won the Jamaican National Lottery. The co-conspirators extracted personal identifying information from the individual victims by telling them that they would send them "winnings" from the Jamaican National Lottery if provided with the information.

Page 8

The co-conspirators applied for at least 23 Direct Express debit cards in the names of the individual victims, in each case listing the Finney Avenue house as the mailing address. At least five (5) Direct Express debit cards in the names of the individual victims were received by Spence and **GENUS**; were activated; and were used to make purchases and cash withdrawals at various locations in or near Baltimore, MD. For example, on or about September 16, 2011, a co-conspirator applied by telephone for a Direct Express debit card in the name of B.M. and provided a SSN of XXX-XX-7381, which SSN belongs to B.M., and a mailing address for the Finney Avenue house. Thereafter, the debit card was used on October 4, 2011 to make ATM cash withdrawals. The total amount of benefits fraudulently withdrawn from these five cards by Spence and **GENUS** was $6,480.15.

Soon after withdrawing benefits, Spence and **GENUS** sent a portion of the stolen benefits by Western Union wire transfer to co-conspirators in Jamaica. Spence and defendant **GENUS** kept a portion of the stolen benefits for themselves and converted them to their own use. During a consent search of the Finney Avenue house in May 2012, law enforcement located two debit MasterCards in the names of S.F. and B.R. in defendant **GENUS's** bedroom, neither of which cards **GENUS** was authorized to use. Those unauthorized access devices were in the names of individuals other than the individual victims connected to the Direct Express debit card scheme.

Defendant **GENUS** was interviewed by law enforcement in May and August 2012. During her interviews, **GENUS** admitted to receiving and using Direct Express debit cards issued in the names of the individual victims. **GENUS** admitted that she knows how Jamaican Lottery schemes work, and that they typically involve stealing other individuals' personal identifying information in order to commit fraud. **GENUS** admitted that she knows it is wrong to use a credit card or debit card in another individual's name.

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.


3/28/13
_____
Date


_____
Scerena Simpson Genus


I am Scerena Simpson Genus's attorney. I have carefully reviewed the statement of facts with her.


3/28/13
_____
Date


_____
Howard Miliman, Esquire


Page 9